UNITED STATES of America, Appellee,

v.

Ernesto ORTIZ–MARTINEZ, Appellant.

No. 76–3583.

United States Court of Appeals,
Ninth Circuit.

July 13, 1977.

Edward A. Applbaum, Douglas & Applbaum, San Diego, Cal., submitted brief for appellant.

John P. Boyl, Asst. U. S. Atty., San Diego, Cal., on the brief, Terry J. Knoepp, U. S. Atty., San Diego, Cal., for plaintiff-appellee.

Before HUFSTEDLER, GOODWIN and ANDERSON, Circuit Judges.

GOODWIN, Circuit Judge:

Ernesto Ortiz-Martinez, an alien, was convicted of violating 8 U.S.C. § 1325 [1] and 8 U.S.C. § 1326 [2], and was sentenced to two years' imprisonment for each violation, with the sentences to run consecutively. The sole issue on appeal is whether consecutive sentencing is appropriate for violations of the two separate statutes in a single transaction.

In 1973 Ortiz-Martinez was convicted of entering the United States in violation of 8 U.S.C. § 1325. He was deported. In 1976 he was found in the United States. He was indicted for a second violation of 8 U.S.C. § 1325 [3] and for a violation of 8 U.S.C.

---

1. § 1325. "Any alien who (1) enters the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact, shall, for the first commission of any such offenses, be guilty of a misdemeanor and upon conviction thereof be punished by imprisonment for not more than six months, or by a fine of not more than $500, or by both, and for a subsequent commission of any such offenses shall be guilty of a felony and upon conviction thereof shall be punished by imprisonment for not more than two years, or by a fine of not more than $1,000, or both."
June 27, 1952, ch. 477, Title II, ch. 8 § 275, 66 Stat. 229.

2. § 1326. "Any alien who—
(1) has been arrested and deported or excluded and deported, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act, shall be guilty of a felony, and upon conviction thereof, be punished by imprisonment of not more than two years, or by a fine of not more than $1,000, or both."
June 27, 1952, ch. 477, Title II, ch. 8 § 276, 66 Stat. 229.

3. Appellant's first conviction under § 1325 was for violation of subsection (1), entry at improper time or place. His second conviction, on appeal in this case, was for violation of subsec-

§ 1326, (reentry of a deported alien). He was convicted on both counts. The single illegal act of reentering the United States violated the two statutes.

■ Congress may authorize cumulative sentences for a single act that violates more than one statute when the offenses created by the statutes are not identical. *United States v. Clements,* 471 F.2d 1253, 1254 (9th Cir. 1972); *cf. Iannelli v. United States,* 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). However, in enacting statutes that are not identical but are closely related, Congress may unintentionally create liability for cumulative punishment on the part of an individual whose conduct constitutes only one illegal transaction. *See United States v. Clements, supra; Milanovich v. United States,* 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961); *United States v. Gaddis,* 424 U.S. 544, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976).

This court has held that "[u]nless we can find from the face of the Act or from its legislative history a clear indication that Congress intended to authorize multiple punishments for a single transaction, we are obliged to construe the Act against the harsher penalties that result from cumulative punishments * * *." *United States v. Clements,* 471 F.2d at 1254.

As in *Clements,* we find no clear indication from the face of the statutes here in question that Congress intended to authorize cumulative punishment. Sections 1325 (felony) and 1326 both authorize the same maximum sentence of two years. However, in authorizing punishment for second-offender aliens, Congress may have unintentionally provided for cumulative punishment of the alien who violates the two statutes in the same transaction. An alien may violate § 1326 without violating § 1325 (felony) by reentering the United States without consent after being arrested or excluded for any act other than a violation of

§ 1325. But no one has suggested to us how an alien who has been convicted of violating § 1325 and deported may violate § 1326 without also violating § 1325 a second time.

If Congress had intended to authorize pyramiding of punishment of the small group of illegal aliens who had previously been deported for violating § 1325, it could have explicitly described this group and authorized a maximum sentence of four years. Congress did not do this and has provided nothing on the face of the statute which would indicate a clear intent to impose cumulative punishment.

An exhaustive reading of the congressional debate indicates that Congress was deeply concerned with many facets of the Immigration and Nationality Act of June 27, 1952, but §§ 1325 and 1326 were not among the debated sections. 98 Cong.Rec. 4301–4321; 4399–4416; 4422–4444; 5088–5115; 5149–5181; 5209–5240; 5326–5334; 5408–5443; 5603–5631; 5756–5804; 7016–7019; 8253–8268 (1952).

The House Report contains only this brief description of the sections:

"In addition to the foregoing, criminal sanctions are provided for entry of an alien at an improper time or place, for misrepresentation and concealment of facts, for reentry of certain deported aliens, for aiding and assisting subversive aliens to enter the United States, and for importation of aliens for immoral purposes." 1952 U.S.Code Cong. & Admin. News p. 1724.

Thus, the legislative history expresses no clear indication of congressional intent to authorize cumulative punishment.

In *Gore v. United States,* 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958), the Supreme Court found that because Congress had enacted three separate statutes over a period of many years in order to prevent narcotics abuse as new manifestations of

tion (3), entry through willfully false or misleading representations. Congress considered the methods of illegal entry outlined in these three subsections of § 1325 to be equally blameworthy since the punishment is the same

for each. Therefore, throughout this opinion, the act of violating § 1325 is described as "illegal entry" rather than as the particular method of illegal entry.

such abuse appeared, one criminal act could violate several statutes and earn a cumulative penalty. Congress intended to punish narcotics trafficking by plugging "loopholes" and screwing the "criminal machinery—detection, prosecution and punishment—tighter and tighter." 357 U.S. at 390, 78 S.Ct. at 1283. This court found a similar intent in two statutes enacted at the same time to punish two distinct and separable acts of narcotics conspiracy in *United States v. Marotta*, 518 F.2d 681 (9th Cir. 1975). But here, Congress enacted two closely related statutes at the same time in order to discourage by equally harsh punishment two kinds of violations of immigration laws. Congress did not express an intent to pyramid the punishment of the alien who violated both statutes in a single transaction.

*Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), expressed a policy of not attributing to Congress an intent to punish more severely than the statutory scheme clearly indicates. *See also Prince v. United States*, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957). Furthermore, while we recognize that the *Clements* case involved a different statute than those interpreted here, we believe that the principle of *Clements* militates against breaking this essentially unitary transaction into its component parts in order to exact consecutive sentences.

The sentence is vacated and the cause is remanded for resentencing as a single offense.

J. BLAINE ANDERSON, Circuit Judge, dissenting:

I do not believe *United States v. Clements*, 471 F.2d 1253 (9th Cir. 1972), and the cases and principles reviewed therein dictate the conclusion reached by my colleagues. I respectfully dissent.

As the majority candidly notes, the facts in *Clements* can be distinguished from those present in this case. As stated in *Clements* and many other cases, statutes are not identical where a different set of ultimate facts must be proven in order to obtain a conviction on each count. Sections 1325 and 1326 of 8 U.S.C. are not identical in the essential and ultimate facts which must be proven. Under Section 1325 a prior violation of that section must be shown. Under Section 1326 a prior deportation and entry without the express consent of the Attorney General is required. Section 1325, as charged here, requires proof of willfulness, whereas Section 1326 requires only a general intent. Obviously, they were separately treated by Congress, entail separate punishments, and were enacted at the same time. From the face of the statutes, it seems clear that Congress intended to authorize multiple punishments and there is no reason to reach out for "rule of lenity" and apply a unitary theory. *Milanovich v. United States*, 365 U.S. 551, 554, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1961). I would draw those distinctions, hold them to be significant, thus precluding the operation of the principle denouncing cumulative sentencing. *Cf. United States v. Marotta*, 518 F.2d 681 (9th Cir. 1975).

These statutes, when read in context with the legislative history (1952 U.S.Code Cong. & Admin.News, p. 1724) evince a strong policy of Congress to deal separately (even harshly) with all conceivable avenues of circumvention of the immigration laws. In short, Congress was plugging "loopholes" and screwing the "criminal machinery—detection, prosecution and punishment—tighter and tighter." *Gore v. United States*, 357 U.S. 386, 390, 78 S.Ct. 1280, 1283, 2 L.Ed.2d 1405 (1958). This it had a right to do without violating the Fifth Amendment.

I would affirm the District Court.