UNITED STATES *v.* GADDIS ᴇᴛ ᴀʟ.

No. 74-1141.   Argued December 15, 1975—Decided March 3, 1976

Sᴛᴇᴡᴀʀᴛ, J., delivered the opinion of the Court, in which all Members joined except Sᴛᴇᴠᴇɴs, J., who took no part in the consideration or decision of the case.  Wʜɪᴛᴇ, J., filed a concurring opinion, in which Bᴜʀɢᴇʀ, C. J., joined, *post*, p. 551.

*Deputy Solicitor General Frey* argued the cause for the United States.  With him on the brief were *Solicitor*

*General Bork, Assistant Attorney General Thornburgh,* and *Jerome M. Feit.*

*Tommy Day Wilcox,* by appointment of the Court, 422 U. S. 1005, argued the cause *pro hac vice* and filed a brief for respondents.

MR. JUSTICE STEWART delivered the opinion of the Court.

A federal grand jury in Georgia returned an eight-count indictment against the respondents Gaddis and Birt, charging them with entering a federally insured bank with intent to rob it by force and violence (Count 1) and robbing the bank by force and violence (Count 2), in violation of 18 U. S. C. § 2113 (a);[1] with possessing the funds stolen in the robbery (Count 3), in violation of 18 U. S. C. § 2113 (c);[2] and with assaulting four people

----

[1] "(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or

"Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny—

"Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both."

[2] "(c) Whoever receives, possesses, conceals, stores, barters, sells, or disposes of, any property or money or other thing of value knowing the same to have been taken from a bank, credit union, or a savings and loan association, in violation of subsection (b) of this section shall be subject to the punishment provided by said subsection (b) for the taker."

with dangerous weapons during the course of the robbery (Counts 4 to 8), in violation of 18 U. S. C. § 2113 (d).[3] At the ensuing trial the Government's evidence showed that three armed men had on March 6, 1974, robbed the National Bank of Walton County in Loganville, Ga.,[4] and that the robbers in making their getaway had engaged in an exchange of gunfire with Loganville's lone police officer. The Government's evidence further showed that two of the three robbers had been Gaddis and Birt.[5] The jury found the respondents guilty on all counts of the indictment, and the trial judge sentenced each of them to aggregate prison terms of 25 years.[6] In imposing the prison sentences, the judge stated:

"[T]he Court realizes that twenty-five years is the maximum, and the cases say that there is a merger of all of those offenses. If there is any question as to the legality of that sentence, that's the Court's intention."

The Court of Appeals for the Fifth Circuit reversed the judgments of conviction and ordered a new trial upon the ground that the District Judge had been in error in permitting the jury to convict the respondents on all

---

[3] "(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both."

[4] Two of the men had entered the bank, brandishing pistols, while the third man had remained in the getaway car outside.

[5] A third man indicted, Billy Wayne Davis, had pleaded guilty and was a principal witness for the Government at the respondents' trial.

[6] The judge imposed 20-year sentences for aggravated bank robbery (18 U. S. C. § 2113 (a)), 25-year sentences for assaults in the course of the bank robbery (§ 2113 (d)), and 10-year sentences for possession of the proceeds of the robbery (§ 2113 (c)), all of the sentences to run concurrently.

eight counts of the indictment. Specifically, the appellate court held that this Court's decision in *Heflin* v. *United States*, 358 U. S. 415, had made it clear that "it is plain error to allow a jury to convict an accused of taking and possessing the same money obtained in the same bank robbery," and that under this Court's decision in *Milanovich* v. *United States*, 365 U. S. 551, "the proper appellate remedy is to remand for a new trial." 506 F. 2d 352, 354. We granted certiorari because of the discordant views in the Circuits regarding the proper application of the *Heflin* and *Milanovich* decisions.[7]  421 U. S. 987.

The Court of Appeals was correct in holding that a person convicted of robbing a bank in violation of 18 U. S. C. §§ 2113 (a), (b), and (d), cannot also be convicted of receiving or possessing the proceeds of that robbery in violation of 18 U. S. C. § 2113 (c). This much was clearly settled in the *Heflin* case. The Court there held that "subsection (c) was not designed to increase the punishment for him who robs a bank but only to provide punishment for those who receive the loot from the robber." 358 U. S., at 419. In "subsection (c) . . . Congress was trying to reach a new group of wrongdoers, not to multiply the offense of the bank robbers themselves." *Id.*, at 420. Thus, while there was in the present case a "merger" of the convictions under §§ 2113 (a) and (d), *Prince* v. *United States*, 352

---

[7] See, *e. g., United States* v. *Sharpe*, 452 F. 2d 1117, 1119 (CA1); *United States* v. *Ploof*, 464 F. 2d 116, 119–120 (CA2); *United States* v. *Roach*, 321 F. 2d 1, 6 (CA3); *Phillips* v. *United States*, 518 F. 2d 108, 110 (CA4); *United States* v. *Sellers*, 520 F. 2d 1281, 1286 (CA4); *United States* v. *Harris*, 346 F. 2d 182, 184 (CA4); *United States* v. *Abercrombie*, 480 F. 2d 961, 964–965 (CA5); *Ethridge* v. *United States*, 494 F. 2d 351 (CA6); *United States* v. *Dixon*, 507 F. 2d 683 (CA8); *United States* v. *Tyler*, 466 F. 2d 920 (CA9); *Keating* v. *United States*, 413 F. 2d 1028 (CA9); *Glass* v. *United States*, 351 F. 2d 678 (CA10).

U. S. 322, the merger could not include the conviction under § 2113 (c). Receipt or possession of the proceeds of a bank robbery in violation of § 2113 (c) is simply not a lesser included offense within the total framework of the bank robbery provisions of § 2113. Rather, § 2113 (c) reaches a different "group of wrongdoers," *i. e.*, "those who receive the loot from the robber."

The Court of Appeals was mistaken, however, in supposing that our decision in *Milanovich* required the ordering of a new trial as the "proper appellate remedy" for the District Judge's error in this case. The very unusual facts in that case were wholly different from those presented here.

In *Milanovich* there was evidence that the petitioner and her husband, "as owners of an automobile, transported three others under an arrangement whereby the three were to break into a United States naval commissary building with a view to stealing government funds," that she and her husband "were to remain outside for the return of their accomplices after the accomplishment of the theft," but that they "drove off without awaiting the return of their friends." [8] If believed by the jury, this evidence was clearly sufficient to support a verdict that the petitioner was guilty of robbing the naval commissary.[9] There was also evidence in *Milanovich*, however, of other and different conduct on the part of the petitioner—that about 17 days after the naval commissary robbery she had obtained and appropriated silver currency taken in the robbery and concealed the same in a suitcase in her home.[10] If believed by the jury, this evidence was clearly sufficient to support a verdict that the petitioner was guilty of receiving and concealing the

---

[8] 365 U. S., at 557 (dissenting opinion).

[9] 18 U. S. C. §§ 641, 2.

[10] 365 U. S., at 554–555, n. 5.

stolen property.[11] The trial judge refused to instruct the jury that the petitioner could not be convicted for both stealing and receiving the same currency, and she was convicted and separately sentenced on both counts. This Court held that under *Heflin* the jury should have been instructed that the petitioner could not be separately convicted for stealing and receiving the proceeds of the same theft. Since it was impossible to say upon which count, if either, a properly instructed jury would have convicted the petitioner, and in view of the grossly disparate sentences imposed upon the petitioner and upon her husband (who was convicted only upon the larceny count), her convictions were set aside and the case was remanded for a new trial.

The present case is of a very different order. While the evidence was certainly sufficient to support a jury verdict that the respondents were guilty beyond a reasonable doubt of aggravated bank robbery, there was no evidence whatever that they were guilty of receiving the proceeds "from the robber." Indeed, except for the evidence of asportation during the robbery itself, there was nothing to show that the respondents had ever received or possessed the bank's funds. Their share of the loot was, in fact, never found. Accordingly, the trial judge should have dismissed Count 3 of the indictment. His error in not doing so can be fully corrected now by the simple expedient of vacating the convictions and sentences under that count.[12]

In many prosecutions under 18 U. S. C. § 2113 the evidence will not, of course, be so clearcut as in the

---

[11] 18 U. S. C. § 641.

[12] In light of *Prince* v. *United States*, 352 U. S. 322, the concurrent sentences under Counts 1 and 2 should also be vacated, leaving the respondents under single 25-year prison sentences for violating 18 U. S. C. § 2113 (d).

present case. Situations will no doubt often exist where there is evidence before a grand jury or prosecutor that a certain person participated in a bank robbery and also evidence that that person, though not himself the robber, at least knowingly received the proceeds of the robbery.[13] In such a case there can be no impropriety for a grand jury to return an indictment or for a prosecutor to file an information containing counts charging violations of 18 U. S. C. § 2113 (a), (b), or (d), as well as of § 2113 (c).[14] If, upon the trial of the case the District Judge is satisfied that there is sufficient evidence to go to the jury upon both counts, he must, under *Heflin* and *Milanovich,* instruct the members of the jury that they may not convict the defendant both for robbing a bank and for receiving the proceeds of the robbery. He should instruct them that they must first consider the charges under § 2113 (a), (b), or (d), and should consider the charge under § 2113 (c) only if they find insufficient proof that the defendant himself was a participant in the robbery.[15]

---

[13] Such a case is not hard to hypothesize. A grand jury or prosecutor may often possess clear evidence that the proceeds of a bank robbery were found in a certain person's possession, and less certain eyewitness or circumstantial evidence that that person was an actual participant in the robbery.

[14] The statement to the contrary in a dissenting opinion in *Milanovich,* 365 U. S., at 558, is incorrect.

[15] If, on the other hand, the indictment or information charges only a violation of § 2113 (c), it is incumbent upon the prosecution at trial to prove beyond a reasonable doubt only the elements of that offense, and the identity of the participant or participants in the robbery or theft is irrelevant to the issue of the defendant's guilt. While a mechanistic reading of *Heflin's* language might not wholly support this rule, it is to be remembered that *Heflin* ultimately held no more than that a person could not be convicted and separately sentenced under § 2113 (a), (b), or (d) *and* under § 2113 (c) because § 2113 (c) could not be used to "pyramid penalties." 358

For the reasons stated, the judgment of the Court of Appeals is vacated, and the case is remanded to that court for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE STEVENS took no part in the consideration or decision of this case.

MR. JUSTICE WHITE, with whom THE CHIEF JUSTICE joins, concurring.

Because the Court deems this case distinguishable from *Milanovich* v. *United States,* 365 U. S. 551 (1961), it sees no occasion to consider the continuing validity of that decision; and I do not read the Court's opinion as reaffirming, in addition to describing, the *Milanovich* rule that a new trial is required when (1) a jury is erroneously permitted to convict a defendant both of bank robbery, 18 U. S. C. § 2113 (a), (b), or (d), and of knowing possession of the proceeds of that robbery, 18 U. S. C. § 2113 (c), and (2) there is evidence to support both convictions.

As the Court states, a jury, having convicted on the robbery count, should stop there without going on to consider the possession count. If the jury is erroneously permitted, however, to consider and convict on the possession count as well, such a conviction casts absolutely no doubt on the validity of the robbery conviction. Under such circumstances it is not impossible to say upon which count, if either, a properly instructed jury would have convicted the defendant. It may be concluded with satisfactory certainty that the jury, having convicted for both offenses, would have convicted of robbery if it had been properly instructed. The verdict on the robbery count shows that the jury found each element of that

---

U. S., at 419. *Heflin* did not purport to, and did not, add to or alter the statutory elements of the offense under § 2113 (c).

offense to have been established beyond a reasonable doubt. That the jury went on to find that the defendant also possessed the proceeds of the robbery—whether on a different date and on different proof or not—casts no doubt on the trustworthiness of the findings on the robbery count. The problem of erroneously permitting the jury to consider and convict on two counts—on each of which, considered separately, the jury was properly instructed—when they should have considered and convicted on only one bears no relation to that presented in *Stromberg* v. *California,* 283 U. S. 359 (1931), in which the jury was permitted to convict on a single count on both a valid and an invalid theory. In *Stromberg,* it was impossible to know whether a properly instructed jury would have convicted the defendant of anything. In the class of cases governed by *Milanovich,* the robbery count is untainted by the fact that in addition to its finding of guilty on that count the jury also made findings on the possession count, for those findings are factually consistent with the findings on the robbery count.

In all cases in which the court correctly instructs the jury on the elements of the crime of robbery, any resulting conviction and sentence should be sustained. In those cases in which the jury also convicts of possession, that conviction and any sentence on it should simply be vacated.* A new trial on the robbery count in any such

---

*If district judges instruct juries as the majority opinion requires, this problem will not arise. However, since this Court's decision in *Milanovich* v. *United States,* 365 U. S. 551 (1961), district judges should have been instructing juries not to consider possession counts, if they convict of robbery. As this case and others attest, *e. g.,* *United States* v. *Sellers,* 520 F. 2d 1281 (CA4 1975), cert. pending, Nos. 74–1476 and 74–6503; *Phillips* v. *United States,* 518 F. 2d 108 (CA4 1975) (en banc), cert. pending, Nos. 75–167 and 75–5457; *United States* v. *Dixon,* 507 F. 2d 683 (CA8 1974), cert. pending,

case would result in an expenditure of court resources and the possibility of an acquittal—through loss of evidence or other causes—of a reliably convicted defendant for no reason.

---

No. 74-5869, district judges have nonetheless made mistakes, and there is no reason to believe that the mistakes will completely cease just because the Court today reiterates the correct instructions.