In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3601

United States of America,

Plaintiff-Appellee,

v.

Catalina Bacani,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:99CR00023--Sarah Evans Barker, Judge.

Argued December 13, 2000--Decided January 5, 2001

   Before Coffey, Easterbrook, and Manion, Circuit
Judges.

   Easterbrook, Circuit Judge.  During its first nine
months of operation, Scoops, Inc., a convenience
store in Indianapolis, reported gross income of
about $90,000. It also redeemed approximately
$173,000 in food stamps, a legal impossibility
because food stamps may be collected only for
eligible food items, a subset of all sales.
Something was amiss. Either Scoops was not
reporting all of its income, or it was buying
food stamps at a discount (also legally
forbidden) and redeeming them at face value.
Concluding that the latter was more likely, a
grand jury indicted Catalina Bacani, Scoops'
owner and the person who signed its food stamp
redemption requests, for violating 7 U.S.C.
sec.2024(b)(1) (unlawful acquisition of food
stamps) and sec.2024(c) (unlawful redemption of
food stamps). A jury convicted her of these
crimes, and despite her lenient sentence (which
does not include any jail time) she has appealed.
Luckily for her, the United States did not file
a cross-appeal. (Application of the criteria in
U.S.S.G. sec.2F1.1 could have produced an offense
level of 14, for which the sentencing range would
have been 15-21 months' imprisonment for a first
offender such as Bacani.)

   Bacani's defense throughout has been that the

grand jury picked the wrong crime. At trial, Bacani's lawyer argued that she lacked the mental state necessary for conviction under sec.2024 because Frank Alnadi, Bacani's boyfriend, really had been running Scoops, and that Alnadi told her what to do. This defense painted Bacani as a persistent liar, for when Scoops applied to participate in the food stamp program Bacani represented herself as Scoops' owner and principal manager and swore that she would be responsible for all food stamp redemptions; every redemption request bore her signature verifying that Scoops had acquired the stamps in exchange for eligible food items. If all of these representations were false, because Alnadi really was in charge and Bacani was no more than a cashier, then Bacani violated 18 U.S.C. sec.1001 at least a dozen times--and she violated sec.2024 too, because she does not deny that she knew exactly what she signed. That someone else may have been the brains of the scheme is no defense.

On appeal, with the assistance of a different lawyer, Bacani advances a different alternative-crime theory. Now she contends that her crime may have been tax fraud--by understatement of Scoops' income--rather than food stamp fraud. Her appellate brief contends that the prosecution's case rests on a difference between Scoops' reported gross sales and its food stamp redemptions. Both the corporation's income reports filed with state officials and the food stamp redemption requests bear Bacani's verification of correctness; neither is more reliable than the other. Thus it is as likely, the brief contends, that the report of sales was too low as it is that the redemption request was too high. If the two crimes are equally likely, the argument concludes, then Bacani must be acquitted, because a 50-50 chance that the crime is food stamp fraud is well short of the reasonable-doubt standard that the prosecution must meet.

One premise of this contention is that tax fraud and food stamp fraud are mutually exclusive, so that Bacani could commit one or the other but not both. That's not true; it is possible (indeed, we think it likely) that Bacani not only understated Scoops' sales (and thus its taxable income) but also overstated the amount of food stamps the store accepted in exchange for eligible items. The record establishes that Scoops tried to report even less income, but that its accountant caught the store making off-register sales and increased reported receipts from $60,000 to $90,000. No matter how much Scoops chiseled on its taxes, however, it may have redeemed more food stamps than it lawfully received. It may, for example, have purchased

food stamps for cash from customers (or other stores), or accepted food stamps for ineligible items such as cigarettes, liquor, newspapers, or other non-food items that represent the stock in trade of convenience stores. Observing that tax fraud is a possibility therefore does not rule out food stamp fraud. The prosecution showed, for example, that Scoops' food stamp redemptions were an order of magnitude higher than those of other, similar convenience stores in its immediate vicinity. What is more, Scoops redeemed some food stamps that an undercover agent had sold, for cash (and thus illegally), to another local convenience store. The only way Scoops could have come into possession of those food stamps was by buying them from the store that purchased them from the agent, and such a purchase (followed by a redemption) violates both sec.2024(b)(1) and sec.2024(c). A rational jury easily could have found the evidence sufficient beyond a reasonable doubt even if it thought the corporation's $90,000 sales report utter baloney.

A second premise of Bacani's appellate argument is that, when it is certain that the defendant committed some crime, but hard to tell which crime, then the jury must acquit outright. Why would that be so? Once criminal conduct has been established beyond a reasonable doubt, punishment constitutionally may follow.

Consider, for example, a person charged with first-degree murder who defends on the theory that the crime was no greater than manslaughter, a lesser included offense. If the jury concludes that it is equally likely that the defendant's mental state amounted to first-degree murder and that it amounted only to manslaughter, must the jury acquit of both offenses? Not at all; the jury will be told to convict of the lesser offense (because the evidence does not establish the greater beyond a reasonable doubt), not that it must set the defendant free.

Next consider the case of inconsistent declarations: the defendant makes two statements under oath, each material to a proper inquiry, but diametrically opposed. Only one of the statements can be true; the other is perjury, but the prosecution cannot establish beyond a reasonable doubt which of the two statements is the false one. This situation is similar to the one Bacani contends this record presents, with either false sales data or false food stamp redemptions but no way to know which is the lie. In the inconsistent-declarations case, however, all the prosecution need prove is the inconsistency and the materiality of the two statements; it is not essential to show beyond a reasonable doubt which statement is the lie. 18

U.S.C. sec.1623(c). The inconsistent-declarations statute lacks a direct parallel in sec.2024, but recall that Bacani is making a constitutional defense. If sec.1623(c) is constitutional (and it is), then there is no constitutional problem with convicting Bacani even though we cannot be certain just which of her irreconcilable statements is false.

Finally, consider genuinely irreconcilable crimes. Robbing a bank and possessing the proceeds of a bank robbery are independent, but as a matter of law mutually exclusive, offenses under 18 U.S.C. sec.2113. See Heflin v. United States, 358 U.S. 415 (1959). A bank robber must be convicted of that robbery and cannot be convicted separately of possessing the proceeds. Conversely, someone who receives the proceeds from the robber, and therefore may be convicted of possession under sec.2113(c), cannot have been the robber and must not be convicted of that offense. Suppose police find someone in possession of money recently stolen from a bank, and the evidence that this person is the bank robber is equivocal. By Bacani's argument the person cannot be convicted of any crime, for the evidence does not show beyond a reasonable doubt that he is the bank robber, and it also does not show beyond a reasonable doubt that he is not the bank robber (which is essential to conviction for possessing the proceeds). To avoid such a windfall for criminals, United States v. Gaddis, 424 U.S. 544 (1976), held that the only prohibition is against multiple convictions for the incompatible offenses. If the evidence shows that the defendant must have committed one of the offenses, but does not enable a jury to choose with confidence, the defendant's entitlement is to be convicted of only one--perhaps the less serious, but one conviction is proper. Id. at 550. See also Richard A. Posner, The Problematics of Moral and Legal Theory 121-22 (1999). Just so here. That Bacani committed multiple crimes is certain, and doubt about just which crimes these were does not make conviction impossible. She does not contend that punishment for multiple tax frauds or false statements to federal agencies in violation of sec.1001 would have been lower than her punishment for food stamp fraud, so she has no complaint.

Affirmed